## No. 14,161.

WILLIAM FREUDENSTEIN VS. MRS. M. FREUDENSTEIN ET ALS.

### SYLLABUS.

This case involves only questions of fact.

APPEAL from the Civil District Court, Parish of Orleans—*Ellis J.*

*Richard H. Browne,* for Plaintiff, Appellant.

*Edward L. Simonds,* for Defendants, Appellees.

The opinion of the court was delivered by

PROVOSTY, J.   The plaintiff sues to be recognized as owner of one-third undivided of a square of ground in the City of New Orleans, and to be placed in possession thereof; or, in the alternative, for judgment against defendant for the value of his interest in said square of ground, namely: two thousand dollars.

He claims title as heir of his father, John Freudenstein, and of his brother, John M. Freudenstein.

In 1861 the property in question belonged to the plaintiff's father, John Freudenstein, who made a sale of it to one Bachman.   In 1869 Bachman conveyed the property to John Thuer, father of the defendants and husband of the defendant tutrix.   Both of these sales were simulations, as fully appears in regard to the first from the testimony and in regard to the second, from the following letter written many years afterwards:—

"NEW ORLEANS, May 17th, 1890.

"My Dear Brother-in-law:—

"We received a letter from your wife a few days ago, in which she enumerated the details in regards to the succession of dear Mother-in-law, saying that she received such an amount, and my wife such an amount, even more according to her statement. She brings forth the vacant square of ground on Henry Clay Avenue, saying that she, your wife, only had four lots, and my wife twelve lots.   This ground has

nothing to do whatsoever with the succession matter. It was placed in my name in 1869, and mother promised to let me have one-half of above square for nine hundred dollars, I to pay all current expenses, such as taxes, fences, etc., and said expenses to be deducted from the above amount. Since I owned square, I have expended and collected, as you will see according to the statement enclosed, amount of money paid out of my pocket. Thus far I have paid more than the amount of $1800.00. It was not until March 30th, 1876, when the Shell Road Bill was to be paid, and mother not having the money to pay her portion, told her sons, John and William, if they would pay her amount, she would give to Caroline, John and William, her portion, or one-half of the said square.

"I have never been compelled to dispose of same, as I am waiting, and have always been advised to hold on, and, from my own observation, I expect to realize a good price ere long. Whenever I sell the piece of ground, I will according to promise, divide, and turn over the amounts belonging to your wife, John and William. My intention never was to sacrifice the place, and I have endeavored to do the best I can for all. They have raised the assessment this year from 1300 to 3500 dollars John is willing to wait, and wishes me to get a good price. If Caroline wishes to sell her lots, I will give her 800.00 dollars, but if she will take my advice, she had better wait a little while, and get all she can. If she needs any money now for repairs on house on Magazine street and taxes for this year, I will lend her the money without interest and wait until the square is sold. I have refused 3500 dollars, I wish you would carefully read this letter, and let me know at an early date your ideas and wishes. Trying to do my best for the interest of all, and trusting my views will be fully understood and satisfactory.

"I remain your dear brother-in-law,

"(Signed)   JOHN THUER."

While this letter was not addressed to the plaintiff, and was not intended to serve as a counter-letter, yet we think it can answer the same purpose since it leaves no doubt that the property was not really sold to Thuer but merely, to quote the language of the letter, "placed" in my (his) "name."

John Freudenstein died in 1875, leaving, surviving him, his widow Elizabeth Frudenstein, survivor in community and owner of one-half

undivided of the property in question, and the following children issue of his marriage:—

John M. Freudenstein;

Elizabeth Freudenstein, wife of Bachman;

Caroline Freudenstein, wife of Kienle;

Rosa M. Freudenstein, wife of John Thuer; the defendant tutrix herein; and William Freudenstein, the plaintiff.

John Thuer, and after him his widow, the defendant tutrix, have been in possession and in charge of the property from the time of the simulated sale, receiving the rent from it and paying all expenses connected with it. Mrs. Bachman and Mrs. Kienle are making no claim to the property. They admit that John Thuer and his wife have settled with them in regard to same.

John Thuer died in 1893, and John M. Freudenstein in 1898. Whether during his lifetime John M. Freudenstein was settled with for his interest in the property, is one of the questions in the case. While the legal proof of his having been settled with is not very strong—parol evidence being inadmissible, the matter involved being title to real estate—we agree with the judge *a quo* it is sufficient. He signed the inventory of the succession of John Thuer wherein this property was stated to belong to that succession, and he took no steps to enforce his rights although he must have known of them, and although three years before his death Mrs. Kienle turned over to him the letter reproduced above, at the same time advising and warning him that he might have trouble in settling with Mrs. Thuer. After his death the letter was found "in an old bureau in the outer shed" among some valueless papers, while his other papers were "in the armoirs and drawers upstairs." We cannot but assume, as did the learned judge *a quo,* that this valuable document would not have been thus cast away if its usefulness had not been done away with by a settlement.

Except parol evidence, objected to and inadmissible, we can find nothing going to show that plaintiff ever parted with his interest in this property derived by inheritance from his father. He makes no claim as heir of his mother. Nor could he in view of the agreement of the mother with Thuer, contained in the letter, that the latter should have one-half of the property in consideration of certain payments to be made. This half, thus disposed of by the mother, must be considered to have been her own half, as she was without right to

dispose, either in whole or in part, of the half belonging to the heirs of her husband. The lapse of time is not so significant, considering that by the letter we are informed in the most reliable manner that so late as 1890 Thuer was still holding the property for the heirs, intending to turn over to them their share of the price whenever a sale should be made.

That plaintiff demanded and received payment from Mrs. Thuer for labor in ditching and for loads of earth for filling, on the property, is not significant. Because he owned a small interest in the property was no reason why he should not bring a bill against it.

As a matter of course plaintiff cannot take back the property without reimbursing to the defendant all the money paid out by Thuer and his heirs on the property in the way of expenses, taxes, etc. That was the agreement. We think with the learned judge *a quo* that the $1800 mentioned in the letter must be taken to be that much money of which John Thuer was out of pocket on account of the property at the date of the letter; and that this $1800 must stand as the first debit item against the property in the account between it and Thuer and his succession, and as of the date of the letter.

We think also that the statement of expenses annexed to the answer must be taken as proved, and that all items thereon from and after May 17th, 1890, must be charged against the property; and that on all these items, including the $1800 five per cent. interest per annum must be charged from their respective dates.

To the credit of the property on the account must be charged the rents received from and after the same date, May 17th, 1890, as per statement furnished by defendant and appearing on p. 185 of the transcript; with five per cent. per annum interest on each amount thus received, from the 31st of November of each year; except that for the year 1890 the rent shall be divided according to time, and only that portion accruing after May 17th, be charged.

To this must be added, *pro* and *con,* all items accruing from rent and expenses subsequently to the time to which the said statements have been brought down.

Any existing lease of the property must be respected.

Defendant has not prayed for judgment against the plaintiff for the $520 allege to have been loaned to him; the only prayer is that any judgment plaintiff may recover be offset by this amount—a prayer

which does not now fit the case, since the judgment to be rendered by us decreeing plaintiff to be owner of one undivided twelfth of the property cannot be offset by a sum of money. The demand therefore fails, without prejudice however to the right of plaintiff to renew it.

The legal situation with reference to the property is that plaintiff owns one-tenth, and defendants nine-tenths thereof, and that defendants are entitled to continue in possession and in charge of the property as heretofore until plaintiff shall have reimbursed to them his *pro rata* share of the balance that shall be found due by the property to the defendants according to a computation to be made in accordance with the views hereinabove expressed; and that in case of a sale to effect a partition the said *pro rata* share of the plaintiff in the amount due as aforesaid to the defendants by said property must be paid to the defendants by preference out of the share of the plaintiff in the proceeds of the sale; and the said legal situation as here declared is hereby made the judgment of the court, the judgment of the lower court being set aside, and the case remanded for the purpose of casting the said account; defendants to pay the costs of both courts.

Rehearing refused.